UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALLEN ATKINS,

          Plaintiff,           Case No. 1:22-cv-910

v.                                   Honorable Jane M. Beckering

J. FAIR et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983 and 1985. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Blair, Erdmans, Beecher, Rewerts, and Washington. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's First Amendment religious exercise and RLUIPA claims against Defendants Ward, Demenov, and Fair, his retaliation claims against Defendants Fair and Blair, and his claims under 42 U.S.C. § 1985

against all remaining Defendants. Additionally, for the reasons set forth below, Plaintiff's pending motions (ECF Nos. 2, 3, 12, and 14) will be denied.

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues Corrections Officers J. Fair, Unknown Ward, and Unknown Demenov; Prison Counselors D. Hoffman, Jacob J. Erickson, Unknown Blair, and James Erdmans; Grievance Coordinator Lisa Beecher; Warden Randee Rewerts; and MDOC Director Heidi E. Washington.

Plaintiff alleges that in November of 2019, Defendant Fair searched Plaintiff's cell for between 60 and 120 minutes. Defendant Fair confiscated one of Plaintiff's padlocks, several state forms, and Nation of Islam materials. Defendant Fair left Plaintiff's property scattered all over the cell, including on his cellmate's bed. When Plaintiff showed Defendant Hoffman the state of his cell, Defendant Hoffman stated that DRF hates Muslims and "n[*****]s of Islam." (ECF No. 1, PageID.6.) Defendant Hoffman told Plaintiff that he had ordered Defendant Fair to destroy all his Nation of Islam materials. (*Id.*, PageID.7.) Plaintiff replied that he would file a lawsuit. Defendant Hoffman then stated that Plaintiff would be transferred from DRF soon. (*Id.*)

Later that day, Defendant Fair wrote a misconduct on Plaintiff and issued contraband removal forms for excessive state forms and rigged padlocks. Plaintiff explains that he had previously stuffed toilet paper in his padlock keyholes to avoid theft of his property by other prisoners who could pick locks, as well as to avoid "unknown property confiscation or destruction by prison personnel." (*Id.*, PageID.5.) At some point on the same date, Defendant Fair entered

2

Plaintiff's cell and grabbed him by the testicles. Defendant Fair then held a knife to Plaintiff's throat and told him that he would not be safe if he filed a lawsuit against Defendants Fair or Hoffman, or against Elisia Hardiman. Plaintiff feared for his life and promised not to file a lawsuit.

The next day, Plaintiff asked Defendants Hoffman and Erickson for protection from Defendant Fair. Defendants Hoffman and Erickson denied Plaintiff's request, and Plaintiff stated that he would sue them. Plaintiff was later told by an unknown corrections officer that he would be assigned to another cell on the same tier. Plaintiff protested that he would not share a cell with sexual predators. Plaintiff was told that the reassignment had been ordered by Defendants Hoffman and Erickson. Plaintiff packed his property and told the unknown officer that he refused to live in 800 unit any longer. Plaintiff was then placed in an isolation cell overnight. The next day, Plaintiff was moved to 700 unit, where Defendants Ward and Demenov subjected him to cell searches, which included the confiscation and destruction of Plaintiff's legal papers and Nation of Islam materials. When Plaintiff questioned them, Defendants Ward and Demenov told him that they had a problem with the grievances that Plaintiff had filed on Defendant Fair. They also said that Defendant Rewerts and Washington hated "Nation of Islam n[*****]s." (*Id.*, PageID.9.)

On January 8, 2020, Defendant Blair called Plaintiff to the officer's station and handed him a mail rejection notice dated January 3, 2020, signed by Unknown Hunter. Plaintiff asked why mail from lawyer Frederick W. Lauck had been treated as regular mail and opened outside his presence. Defendant Blair called Plaintiff a racial slur and told him to shut up and go away. Defendant Erdmans was present during this exchange and refused to call the supervisor, saying that "no n[*****]s giving no orders at DRF." (*Id.*, PageID.10.) Plaintiff stated that he would sue them.

Plaintiff states that another prisoner attempted to purchase two copies of a Nation of Islam book entitled "How to Eat to Live," one for himself and one for Plaintiff. (*Id.*, PageID.11.) However, Defendant Erdmans stated that Defendants Washington and Rewerts hated that book and would not allow prisoners to read it. Plaintiff told the other prisoner that they would sue.

On January 8, 2020, Defendant Blair told Plaintiff that he would be transferred because of his litigious activities. Defendant Blair also stated that the grievances Plaintiff had filed on Defendant Fair caused Defendants Rewerts and Washington to order DRF staff to "violate Plaintiff as much as possible." (*Id.*, PageID.12.) After lunch, Plaintiff was told to pack his property because he was being transferred to 900 Unit, but after dinner, Plaintiff was told he was being transferred to another prison. On January 9, 2022, Plaintiff was transferred to Kinross Correctional Facility (KCF).

Before his transfer to KCF, Plaintiff placed signed grievance forms against all Defendants except Defendant Fair in the mail/kite box. A month later, Plaintiff had not received a response, so he mailed grievances to DRF using stamped envelopes. Plaintiff never received a response to any of these grievances, but states that he did receive a response to his grievance on Defendant Fair.

Plaintiff claims that Defendants violated his First Amendment rights to be free from retaliation and to freely practice his religious beliefs, his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), and the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

      A.    **Retaliation**

In his first count, Plaintiff states that Defendants Hoffman, Erickson, Ward, Demenov, Blair, Erdmans, Rewerts, and Beecher retaliated against him in violation of the First Amendment.

5

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

### 1. Defendants Hoffman and Erickson

Plaintiff asserts that Defendants Hoffman and Erickson ordered that his cell assignment be changed from being housed with a compatible cellmate to being housed with a known homosexual

6

predator in retaliation for his statement that he would sue them and Defendant Fair. (ECF No. 1, PageID.13.) Plaintiff packed his property and told the unknown officer that he refused to live in 800 unit any longer. Plaintiff was then placed in an isolation cell overnight, so it does not appear as if Plaintiff was ever housed with a homosexual predator. However, a specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). The Court concludes that Plaintiff has sufficiently stated a First Amendment retaliation claim against Defendants Hoffman and Erickson.

### 2. Defendants Ward and Demenov

Plaintiff claims that Defendants Ward and Demenov wrongfully confiscated and destroyed his legal and religious documents in retaliation for the grievances he filed against Defendant Fair. Plaintiff states that Defendants Ward and Demenov specifically told him that they had a problem with his conduct in filing the grievances. Moreover, a cell search may be considered sufficiently adverse to satisfy the adverse-action requirement of *Thaddeus-X*, where the search leaves the cell in disarray and results in the confiscation or destruction of materials. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (citing *Walker v. Bain*, 257 F.3d 660, 664 (6th Cir. 2001)). Therefore, the Court concludes that Plaintiff has sufficiently stated retaliation claims against Defendants Ward and Demenov.

### 3. Defendants Blair, Erdmans, and Rewerts

Plaintiff contends that Defendants Blair, Erdmans, and Rewerts retaliated against Plaintiff for his statement that he planned to file grievances and a lawsuit against them by having him transferred from one unit to another on January 8, 2020, and then from DRF to KCF on January 9, 2020. Ordinarily, transfers to the general population of another prison are not typically an adverse

7

action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, 630 F.3d 468, 474–75 (6th Cir. 2010), the court held that transfer to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. The *Hill* court determined that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. In *Pasley v. Conerly*, 345 F. App'x at 981, the Sixth Circuit held that a threat to have a prisoner moved out of the unit so that he would lose his job, together with a threat to influence the warden to have the prisoner transferred to another institution far from his family were sufficiently adverse to be actionable. *Id.* at 985. The court recognized that a threat is actionable if it otherwise meets the standard that it would deter a person of ordinary firmness from engaging in a protected activity. *Id.* (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)).

Plaintiff is a security level II prisoner. (*See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=742687.) In addition, DRF and KCF both accommodate I, II, and IV prisoners. (https://www.michigan.gov/corrections/prisons.) Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that his access to the courts was compromised as a result of the transfer. The Court concludes that because Plaintiff has failed to allege facts showing that the transfer was sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct, the Court will dismiss Plaintiff's retaliation claims against Defendants Blair, Erdmans, and Rewerts.

### 4. Defendant Beecher

Plaintiff asserts that Defendant Beecher violated his First Amendment rights to petition the government for redress of grievances when he failed to process the majority of Plaintiff's grievances in a timely manner. However, Plaintiff fails to allege any facts showing that Defendant Beecher's conduct was motivated by a desire to retaliate against him.

Furthermore, Plaintiff's right to petition government is not violated by Defendant Beecher's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendant Beecher's actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual

9

injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable First Amendment claim against Defendant Beecher.

### 5. Defendant Fair

To the extent that Plaintiff is claiming that Defendant Fair retaliated against him (ECF No. 1, PageID.14), the Court notes that Plaintiff fails to allege any conduct on the part of Defendant Fair—let alone any actions that constitute adverse actions—after Plaintiff filed grievances on Defendant Fair for the November of 2019 cell search, property seizure, and alleged assault. Therefore, Plaintiff fails to state a retaliation claim against Defendant Fair.

### B. First Amendment and RLUIPA

Plaintiff claims that Defendants Fair, Demenov, and Ward violated his religious rights by confiscating and destroying Plaintiff's religious and prayer materials. The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

If a plaintiff sufficiently alleges that possession of the property was necessary to his sincerely held religious beliefs, the next consideration is "whether the challenged practice of the prison officials infringes on the religious belief. . . ." *Kent*, 821 F.2d at 1224–25. A practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice. . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 736. "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'" *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)). A particular government action

11

will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult. . . ." *Id*.

RLUIPA creates a burden-shifting framework for assessing prisoner claims. A prisoner bears the initial burden to show (1) his desired religious exercise is motivated by a "sincerely held religious belief" and (2) the government is substantially burdening that religious exercise. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019); *see also Ackerman v. Washington*, 16 F.4th 170, 179 (6th Cir. 2021) (citing *Cavin*, 927 F.3d at 458). "If the prisoner successfully shows the state substantially burdens a sincere religious belief, the burden shifts to the government to justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test,' with a slight twist." *Id.* (quoting *Cavin*, 927 F.3d at 458). Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

Plaintiff's claim is largely conclusory as he fails to specify the items seized or to explain why they were necessary for his religious practice. Because Plaintiff has failed to allege sufficient facts to support his claim that the seizure of the documents imposed a substantial burden on the observation of a central religious belief or practice, his First Amendment free exercise and RLUIPA claims against Defendants Fair, Ward, and Demenov are properly dismissed.

Plaintiff also claims that Defendants Rewerts and Washington violated his First Amendment and RLUIPA rights by instituting a publication restriction and/or enforcing a restriction on the book "How to Eat to Live." In his motion for a preliminary injunction (ECF No. 3), Plaintiff asserts that he needs access to the book because it contains dietary information specific to members of the Nation of Islam religion. However, Plaintiff fails to allege in either his

complaint or his motion for a preliminary injunction facts showing that his lack of access to the book "How to Eat to Live" constitutes a substantial burden on the observation of a central religious belief or practice. Plaintiff does not assert that the book is the only source of information on Nation of Islam dietary laws or that Plaintiff's current diet does not comply with his religious beliefs.

Pursuant to MDOC policy, prisoners are not permitted to receive publications "that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner." Mich. Dep't of Corr. Policy Directive 05.03.118 ¶ MM (effective March 1, 2018). Publications "advocating racial supremacy or ethnic purity or attacking a racial or ethnic group, which is reasonably likely to promote or cause violence or group disruption in the facility" fall within this definition and are, therefore, prohibited. *See* Mich. Dep't of Corr. Policy Directive 05.03.118 ¶ NN(6).

Plaintiff attaches a copy of a page from the restricted publications list showing that the book had been added to the list on January 1, 2005, as "mail attacking a racial or ethnic group, which is likely to promote group disruption." (ECF No. 1-1, PageID.23.) Plaintiff's complaint does not contain any factual allegations showing that the reason that "How to Eat to Live" was placed on the restricted publication list was illegitimate.

Initially, the Court notes that pursuant to the MDOC policy directives in effect as of the date "How to Eat to Live" was placed on the restricted publications list, the determination of whether to place an item on the list was made by the Deputy Director of the Correctional Facilities Administration (CFA). *See Alderson v. Burnett*, No. 1:07-cv-1003, 2008 WL 4185945 (W.D. Mich. Sept. 8, 2008) (citing Mich. Dep't of Corr. Policy Directive 05.03.118 ¶¶ PP-RR (effective Dec. 19, 2003)). Plaintiff fails to allege that either Defendant Rewerts or Washington were ever employed as Deputy Director of CFA. Therefore, Plaintiff's assertion that either of these

13

Defendants are responsible for the placement of "How to Eat to Live" on the restricted publication list is clearly without merit.

With regard to his claim that Defendants Rewarts and Washington improperly enforced the restriction, the Court notes that the stated reason for placing "How to Eat to Live" on the restricted publication list is that it contains material attacking a racial or ethnic group, which is likely to promote group disruption. (ECF No. 1-1, PageID.23.) Plaintiff has failed to allege any facts indicating that the stated reason is incorrect. In his motion for a preliminary injunction, Plaintiff states that prisoners were allowed to purchase and possess "How to Eat to Live" prior to January 1, 2005, and that there was no record of any non-African American being killed or hurt due to the contents of the book. (ECF No. 3, PageID.34.) However, Plaintiff fails to state how he knows this. Moreover, even if this is true, it does not change the conclusion that "How to Eat to Live" contains material attacking a racial or ethnic group which is likely to promote group disruption. Plaintiff also states that if the reason for the publication restriction was true, the MDOC would ban all Nation of Islam materials and classify the Nation of Islam as a security threat group. (*Id.*) However, Plaintiff fails to explain why he believes this to be true. The restriction of one item does not automatically necessitate the restriction of other items merely because they involve the same religion. After careful consideration, the Court concludes that in light of the overwhelming interest prison officials have in preventing racially motivated disruptions within correctional facilities, Plaintiff has failed to show that the restriction violates his rights under the First Amendment.

Plaintiff has failed to allege facts showing that the inability to possess the publication "How to Eat to Live" constitutes a substantial burden on his religious exercise. Furthermore, even if Plaintiff made such a showing, the RLUIPA is not violated where prison officials prohibit prisoners from possessing a publication based upon legitimate penological security concerns. *See,*

e.g., *Murphy v. Lockhart*, 826 F.Supp.2d 1016, 1033–34 (E.D. Mich. 2011); *Hendrickson v. Caruso*, 2008 WL 623788 at *6 (W.D. Mich. Mar. 4, 2008). Therefore, Plaintiff's First Amendment and RLUIPA claims against Defendants Rewerts and Washington are properly dismissed.

### C. Eighth Amendment

Plaintiff claims that Defendant Fair violated the Eighth Amendment when he sexually assaulted Plaintiff in November of 2019. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* At this stage of the proceedings, taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that Plaintiff's allegations rise to the level

15

of an Eighth Amendment violation. Therefore, Plaintiff's Eighth Amendment claim against Defendant Fair may not be dismissed on initial screening.

### D. Claims Under 42 U.S.C. § 1985

Plaintiff also references § 1985 in the introduction section of his complaint, but he does not make any further reference to § 1985 in the complaint. (*See* ECF No. 1, PageID.1, 3.)

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[1] a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, the plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff's complaint is devoid of facts suggesting that Defendants' alleged actions were motivated by Plaintiff's membership in a distinct class. Therefore, Plaintiff's § 1985 claims against all Defendants will be dismissed.

---

[1] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

### III.　Pending Motions

Plaintiff has filed two motions seeking a reduction in the filing requirement of providing copies for each Defendant being served. (ECF Nos. 2, 12.) Plaintiff asserts that he had his paper and ink pens confiscated and is unable to provide the necessary copies. Plaintiff also seeks the appointment of a process server. (*See* ECF Nos. 2, 12.) However, Plaintiff has not yet been ordered to provide any copies for service. Therefore, these motions are premature and will be denied.

As stated above, Plaintiff has also filed a motion for a preliminary injunction seeking to revoke the publication restriction for "How to Eat to Live." (ECF No. 3.) However, as noted above, Plaintiff has failed to allege facts showing that his inability to read and possess "How to Eat to Live" violated his rights under the First Amendment and RLUIPA. Therefore, his motion for a preliminary injunction will be denied.

Additionally, Plaintiff filed a motion to expedite, requesting that the Court "expedite the proceedings" by serving his complaint. (ECF No. 14, PageID.75.) Plaintiff's request to serve the complaint is premature. Prior to service of the complaint, this action will be referred to the Court's *Pro Se* Prisoner Mediation Program. Accordingly, Plaintiff's motion to expedite (ECF No. 14) will be **DENIED** at this time.[2]

### Conclusion

Plaintiff's pending motions (ECF Nos. 2, 3, 12, and 14) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that

---

[2] In Plaintiff's motion to expedite, he references filing several motions in this action. The motions referenced by Plaintiff were not filed in this case. Because these documents were not filed in this case, the Court will not address any of the documents referenced by Plaintiff in his motion to expedite. Plaintiff also references filing a letter addressed to the Clerk's Office, requesting a copy of the docket sheet for this action. Such letter was received by the Court at the time that Plaintiff filed his motion to expedite, and pursuant to Plaintiff's request, the Clerk mailed a copy of the docket sheet to Plaintiff on January 27, 2023.

Defendants Blair, Erdmans, Beecher, Rewerts, and Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's First Amendment religious exercise and RLUIPA claims against Defendants Ward, Demenov, and Fair, his retaliation claims against Defendants Fair and Blair, and his claims under 42 U.S.C. § 1985 against all remaining Defendants. Plaintiff's retaliation claims against Defendants Ward, Demenov, Hoffman, and Erickson and his Eighth Amendment claim against Defendant Fair remain in the case.

An order consistent with this opinion will be entered.

Dated:   February 13, 2023                  /s/ Jane M. Beckering
                                            Jane M. Beckering
                                            United States District Judge